CASE *v.* BOGART.

1. DEEDS—COMPETENCY—EVIDENCE.

Testimony that decedent grantor was affected with a disease which caused dizziness and mental weakness and made him forgetful, met by the testimony of numerous friends and acquaintances that he was capable of transacting business though he showed the effects of advanced age, that at the time of executing a deed to his daughter he was 76 years of age, and was treated by complainants as competent until he entered into a marriage that was displeasing to them, *held*, to warrant the decree and finding of the circuit court sustaining the deed of his homestead to his daughter.

2. SPECIFIC PERFORMANCE—EQUITY PLEADING—PRAYER.

Under a bill of complaint charging that a deed from decedent to his daughter was invalid because of the grantor's mental incompetency, evidence that an agreement was made between the daughter and complainants after the father's decease that if she would release her rights in and to the father's estate they would deliver possession of the farm to her, but that she refused later to carry out the agreement, did not justify granting the relief of specific

performance, in the absence of a prayer for such relief in complainants' bill, especially when they did not come into court on that theory, and only demanded the specific enforcement of the arrangement if they failed to establish their claim.

Appeal from Montcalm; Davis, J. Submitted June 22, 1914. (Docket No. 66.) Decided September 29, 1915. Rehearing denied December 22, 1915.

Bill by Seymour J. Case and others against Estella Bogart to set aside a deed. From a decree for defendant, complainants appeal. Affirmed.

*N. O. Griswold*, for complainants.

*Rarden & Rarden* and *Kelly S. Searl*, for defendant.

Bird, J. Chauncey Case resided in the township of Crystal, Montcalm county, for half a century previous to his death, which occurred on May 13, 1911, at the age of 79 years. During this time he acquired the title to farm lands, whose value at the time of his death was about $12,000. He left him surviving one son, Seymour J. Case, a daughter, Emma Johnson, and a granddaughter, Marion Grimm, the complainants herein, and another daughter, Estella M. Bogart, who with her husband are the defendants in the case. In August, 1888, Mr. Case deeded to his son, Seymour J. Case, 50 acres of land, subject to a mortgage lien of $550, and called the consideration therefor $2,000. Three years later, in December, 1901, he made a will in which he gave to his wife the life use of all his property. To his two daughters and one granddaughter he gave the sum of $2,000 each. He recited in the will that he had given the son $2,000, and that he made this bequest in order to make the shares of the other children equal. The will disposed of only about half of his property.

In 1907 his wife died, and about a year thereafter he married a second wife, with whom he lived about a year, when some difficulty arose, and they separated. Following this a property settlement was made, and she released all of her interest in and to his property. In November, 1909, he deeded to his daughter Estella M. Bogart, without the knowledge of the other children, the homestead, consisting of 40 acres of land, and left the deed in the hands of the scrivener, with instructions to place it of record and deliver to her after his death. After his death the scrivener did as instructed, and it was then learned by complainants that he had made this conveyance. Trouble arose at once between the complainants and defendants by reason of it, and this bill was filed by complainants to set it aside, claiming that the father was not mentally competent at the date of its execution to dispose of his property.

Upon behalf of both complainants and defendants several witnesses were sworn whose testimony bore upon the father's physical and mental condition at the time the deed was executed. The gist of the complainants' testimony was that beginning with the year 1907, and continuing up to the time of his death, Mr. Case was suffering from the effects of a kidney and bladder difficulty, that he had difficulty about the retention of his urine, and that in consequence thereof, he declined physically and mentally, and that he was troubled with dizziness and had to be assisted in some of his business transactions, and that he became very forgetful.

The witnesses offered in behalf of defendant were people with whom he associated socially and in a business way. His scrivener, banker, doctor, minister, and near neighbors gave evidence, in substance, that in 1909, when the deed was executed, he was showing the effects of advanced age, but so far as they noticed he was normal mentally, and that he transacted his

business matters the same as he had done before that time.

The testimony shows very conclusively that at times nearly all of the children had had some trouble with the father; that he had taken offense at the defendants by reason of a lawsuit which he had had with defendant's husband over a settlement growing out of their occupancy of his farm. It was also shown that about the time he was contemplating the second marriage complainants filed a petition in the probate court to have him declared incompetent and a guardian appointed; this was afterwards abandoned, but the old gentleman took offense at this, and after he married the second wife the complainants had very little to do with him until after she left; that during the time he lived with his second wife the daughter, Mrs. Bogart, was on friendly terms with him, and was friendly with him at the time the conveyance in question was made. It does not appear from the testimony that any disinterested person who had an opportunity to know anything about Mr. Case regarded him as incompetent in 1909 to look after his business matters and dispose of his property, and none of the children appears to have been possessed of that notion until they heard that he was contemplating matrimony the second time, and had deeded this 40 acres in question to the defendant Mrs. Bogart.

The testimony fails to convince us that the grantor of the deed was mentally incompetent at the time of its execution. Having reached this conclusion, it is of very little importance by what motives Mr. Case was actuated in giving to Mrs. Bogart more than to other of his children. He may have intended, as appeared from the testimony, to divide his property equally between them, but this resolve may have been altered by the treatment accorded him by his children in his last years in their impatience to get possession

of what they were pleased to call *their* share of the property.

As soon as defendant learned that her father was dead, she caused the deed to be placed of record, and attempted to take possession of the homestead. In this she was prevented by the other heirs. The suggestion was finally made that, if she would release all right to her interest in the estate as heir or legatee, they would surrender possession to her. It is said that she agreed to this, but after being let into possession she refused to carry out the agreement. We are asked by complainants to decree a specific performance of this agreement in the event that we find Mr. Case was competent to execute the deed. One of the difficulties in the way of granting this relief is the fact that the bill of complaint does not pray for such relief. The complainants themselves did not come into court relying on the agreement and ask to have it specifically enforced, and do not ask it now, unless they fail on the other branch of their case. The pleadings and position of complainants on the hearing were such that no relief can be consistently granted on that ground.

It is further claimed that the understanding between the father and the scrivener was that the deed should be deposited with the scrivener subject to recall by the father. We do not find this claim sustained by the testimony.

We think the conclusion arrived at by the chancellor was the proper one, and the decree is affirmed, with costs to defendants.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.